I understand that that's, but this sentence here was not at the departure level. The court went lower than that. The court went to 240. And again, explained its reasons on this record thoroughly for that variance. So, so if a judge, if were to do a sky's the limit sentence, is it the government's position that the only check on that would be substantive unreasonableness? My time's up. I wish I could just stop talking, but I'm going to answer the question to say that I think I'm learning things as you talk. I think that the problem there, Your Honor, is that the variance language would have to be incorporated, something within the 3553A explanation, right? So it would have to be history and characteristics of the defendant. It would have to be deter and protect the public. It would have to be any of those factors. And there would have to be an explanation, as there was here, to justify. And it would have had to have been related to those reasons. You couldn't just say, you know, for all the offensive reasons, you couldn't say because he's, you know, his skin's purple or his hair's orange. I mean, that wouldn't work. But the 3553 factors are notably Alaskan, right? So as long as a judge were to check the boxes on that particular provision, do anything she wants, subject to a very deferential, substantive unreasonableness review. I stick with my prior answer, Your Honor. I think that it would have had to have been, I couldn't stand here and tell the court, you know, considering 3553A factors that were completely, you know, nonsensical or not reasonable. The whole standard here, to remind myself, is reasonableness and whether or not it was reasonable. And so here, what the judge did and how it explained it was reasonable. And in Your Honor's hypothetical of, you know, something, I don't know, flimsy or whimsical, I'm not sure what other word to use, but if it's not reasonable, then no, that's the standard. Before you sit down, does the record reflect at what point Mr. It's in the judge's decision, but it's also in the PSR. It was in 2011. First time. He was arrested in 2011. Yeah. Then they must have been looking at him at some point before 2011. No, again, Your Honor, I can point most immediately to the spot in the sentencing decision, but it was a controlled by that was orchestrated. There was information that was obtained that this is, by the time Mr. Montalvo had moved to New York City, and there was information about him ferrying cocaine back to Buffalo at that point. I'm just trying, you know, it doesn't, I will tell you, it doesn't really directly bear on this case. But I wonder how this man, who had nothing to do with these murders, ended up spending 10 years incarcerated. He went to, I do have that information, but it's not, as Your Honor knows, it's not relevant, but it's, there's a Buffalo News article I could point Your Honor to, but there was a Buffalo News article recently in March of 2022, if the court wants the non-record explanation, but he overheard information at the funeral, and the gentleman was, had a mental capacity that he suffered from that influenced what he said in that moment to try to save his friends, to protect his friends. So he, when he did the confession, but there was also, as my colleague pointed out, there was also actions undertaken by the officer involved investigating that were subject to discipline. So that, there was just a recent, I'm sorry, March 2022, Buffalo News. So I'll check it out. If there's no further questions, thank you. Once again, with the court's permission, I'll take that. Thank you very much, Your Honor. We undoubtedly agree that this is a confusing and difficult case. I think we've made that clear in our brief. But what we do say, and I think what everybody is so caught up with, one, the court does specifically say at the end, the district court says at the end, it is a variant. And our limits on variants, I think we would, in this case, and I do think, and I even say in Dorvay, also speaks about specific, that here, it appears from reading the memo, the decision of memo, and the lengthy discussion in the sentencing proceeding, that the court came to the realization that a departure under 5K2.21 didn't work. And so then it went to a variance. And a variance is not a basis where the departure. It's not, oh, departures don't work here. We're going to go to a variance. Because the variance, we can consider everything, and it's more, excuse the word, you know, loosey-goosey as far as the law and what's applicable. I don't think that that's appropriate. I think what's here is that the court should not have gone to this extent with the variance where the factual basis, such as the court pointed out. Are you saying that it's improper to go to a variance, it's improper to use a variance that's not consistent with your departure authority? Well, there's no question generally, and courts do this all the time, having, you know, that I'm in the district court. By analysis, they'll look at a, in fact, defense counsel will, you know, advocate for a variance by analogy. You know, looking at coercion or duress or something saying, okay, it doesn't fit within the guideline, but we're going, we ask the court by looking at some of the statements. But A, 5K2.21 is a policy statement, number one. And I think so it's not even a guideline that has to be followed. But besides that, here, when we look at here, that, and I do say a variance has to be fact-specific, Your Honor, such as when the court, based on its findings, said, well, the fact that he had this prior drug relationship with the Camacho brothers gave the other participants a feeling of confidence that he knew what he was saying when he, whatever he talked about, the money would be in the back room. Well, that's not what happened per the record. The record does not support the fact that he told the participants that, well, you can trust me, or, you know, I have this prior relationship, whether, and who you believe, but ultimately the district court found that they didn't go in for the drugs, that it was the lottery money, and so they didn't talk about that. What standard should we review a variance? Well, we have standards. You know, it has to be unreasonably. Substantive unreasonableness? Well, if we talk about substantive, yes, it has to be substantive. Anything else? Well, I think it has, and substantive unreasonableness has to be based on facts, that if the factual findings are not supported in the record, which it was not here, he's not the leader, he's not the mastermind, he didn't tell them to go into drugs, all he did, essentially, was drive them. He didn't, yes, he knew they had guns and a bat, but he didn't say go in there. In fact, he said- I'm a little confused, because if there was a clearly erroneous finding of fact, you wouldn't have to show substantive unreasonableness, you'd have a procedural error. And substantive unreasonableness is the sentence we've said, shockingly high, shockingly low, unsupportable as a matter of law. That's a broad and, you could say, amorphous standard to some degree, but that's what our case law says. And I have in my brief stated and argued for that, but I also would say in this case where the basis for the ten years, basis has to do with findings that I say are just simply not supported by the record, that adds to the substantive unreasonableness. We also argued procedural. I do want to stress again that where the court makes much of the fact that, after all, the 924C was dismissed, under 5K2.21 where it talks about dismissed, you know, pursuant to a plea agreement that there is a count dismissed, it's not just that he makes much of that, but there's not much to that, because, in fact, as I stated, that count could not have been sustained at trial if it's not related to the drugs. The Hobbs Act was not charged. In the end, what we really had, if you looked at everything, you know, in retrospect, you could say what should have been charged at that time was a conspiracy to commit a Hobbs Act. But, of course, we know that that would now have not been sustained now, you know. And at that time of the sentencing, it wouldn't have been sustained. But what I'm saying is you have to look at this. When you look at a variant, even substantive unreasonable, it shocks here because that it was the ten years for a crime that he's finding by a preponderance. He goes to the Hobbs Act, which is certainly not foreseeable, which is the robbery of the chain, the attempted robbery of the gold chain, which had nothing to do with this case. That's when you say, wait a second, let's say, yes, this is a horrible murder, there's no question, but let's not be blinded on that. We have to look at the entirety of this case, unless there's any other questions. Thank you very much. Thank you both. Thank you both. Interesting case. And we'll take the matter under advisement. Thank you. Thank you. May it please the court. Michael Celio for Amherst. For decades, this court and every other court of appeals has held when the parties build into their contracts arbitral rules that give arbitrators the power to decide issues of arbitrability. That amounts to clear and unmistakable evidence that the parties intended to delegate that question to the arbitrators. The sophisticated parties here did just that. They wrote, and I'm quoting from 318 to 319 of the record, all disputes will be finally settled under the rules of arbitration of the ICC. That is the broadest form of delegation possible. There's a carve-out, and I'll get to it in a second. But there is no broader starting point. And this court held in Shaw, 322 F3rd 115, that this precise language, ICC Rule 6.3, effects clear and unmistakable evidence of delegation. In our view, that should be the end of the matter. All disputes are settled under ICC rules. ICC rules provide that an arbitrator decides the who question. This is the only reference to delegation, anywhere in the context. If the carve-out, you said to put that to the side, but the idea that that initial reference to arbitration rules, that's the end of the argument. If the carve-out said, for instance, intellectual property issues aren't subject to arbitration, and the determination of whether or not they're subject to it would also apply. I don't have to say that a general provision that says defer to arbitration means we don't consider the carve-out. Your Honor, hit it right on the head. That's exactly where I was going to go. So what this circuit has said, and it's somewhat different than what other circuits have said, but what this circuit said is you take everything into account. You take all the evidence of the party's intent. This is contracts, just like we all learned in the first year of law school. And we take all evidence of the party's intent. So the one thing we can't do, and the Supreme Court told us this in no uncertain terms, is we can't look at the subject matter of the carve-out. We're just required to close our eyes to that, even if it is wholly groundless. It's the most extreme formulation I've actually ever heard. We can't look at that. What we can look at, it's not irrelevant. The carve-out is not irrelevant. Under this circuit's law, what the carve-out goes to is the question of how broad, what the scope of the delegation is. So let's talk about that. What is the scope of the delegation here? It is absolutely everything other than one area of the law, and within that area of the law, a subset, five or six listed categories of the subset. So what you ask yourself, under this Court's precedent in DDK Hotels, in Bushek, going back to Alliance Bernstein, going back, VRG, all of these cases, still good law, what we say is, okay, what did the parties mean? How much did they give on the question of who? And I think the evidence is pretty clear here that while they gave a decision rule in 7.2.1 about how whoever it is is going to decide decides that, that's a decision rule in 7.2.1. That's the second question under VRG. Why wouldn't you look and say that there are two, essentially two dispute resolution sections in this contract? The ICC rules are incorporated into one of them, but not into the others. That's sort of the exact flip of what you said, meaning that's a pretty clear indication that with regard to the IP disputes, that second subsection, the ICC rules are not applicable. Particularly that ICC rule that addresses who decides. A really excellent analysis of that exact question, Judge Thapar in the Sixth Circuit gave in the Blanton case. That's just not the order of operations that we're allowed to do that in, because these are tricky questions, but what we end up getting back to is we end up doing what Justice Kavanaugh said we couldn't do in the Schein case. Unfortunately, that way of doing it ends up backing you directly into looking at the substance of the question, the how do you decide. What I think is so instructive in Blanton is he goes through, Judge Thapar goes through and explains sort of where the provisions are. So I think that the argument on the other side would be much more powerful if in 7.1.1 there was an exception there. But this is instead, and they could have done that. Again, sophisticated commercial parties, lots of lawyers everywhere, lots of really smart people who know these rules. They could have said we're not delegating that point. I think if you look at this contract, they were doing it in a very elegant way with reference to the way the courts look at this. I think 7.1.1 is delegation, and 7.2.1 is the decision rule on arbitrability. So I think that in this sense what you've done is what we have here is parties who are actually trying to look at what the law is and to write a contract that complies with it. I think that this is, I realize that this may not be important in the way the last case was important to people being incarcerated and those things, but this is a very important commercial decision because hundreds and thousands of contracts get written on reliance on this idea that when you incorporate these rules, this is how you do it. And I want to make a special point about the kind of case we have here. This is a classic Silicon Valley dispute. Why would you care who decides? Well, because in arbitration it's all secret. It's off the record. It's not the right of public access that we enjoy here. When you're talking about high-tech disputes, it is very reasonable to choose to have that threshold question of what's in, what's out be done in that forum because when you do it as we've had here in this public forum, what essentially has happened, and this is true, is we've had our arbitration complaint basically cross out the bottom contract, put on the bottom patent, and that's now become a very, very public question. So to go back to where I began, what did the parties intend? They certainly didn't intend where we are now. They certainly didn't intend that all of this information be public. What the other side is asking this court to do. I don't follow that because the parties obviously intended or understood that sooner rather than later the IP dispute would be in the courts so it would be public. This specific one, I don't believe that they did. They certainly, I agree, Your Honor, they certainly agreed that certain things did. I think what this contract read as a whole. If it's an IP dispute, it will hit the court, won't it? Not all. If it's in the five delineated categories of IP dispute, yes, Your Honor, it will. The IP disputes that are covered by the line which we've been talking about. Yes, sir. That's exactly right. And if this is such an obvious question, then frankly I don't know why we've spent the last two years fighting this. We have an arbitration panel. My friend on the other side and I are about to try this case in arbitration in about a month. If this was such an easy question, it could have and should have been presented to the arbitration panel and they would have decided it very quickly and all of our arguments would be moved. I think that that is real world evidence that there is in fact a live dispute. I think it's beyond the purposes of this court to go too deep into that. But the real dispute between the parties here is who gets to sell into what markets. The patent claims aren't even the tail on the dog. They're something crawling on the tail of the dog. They're so downstream from what's actually in dispute here. Again, the order of operations matters. Delegation goes first without reference to subject of the arbitrability clause. I see the red light is on. I will reserve the rest of my time. Good afternoon, Your Honors. If I can remove my mask. Good afternoon. I'll start with Judge Livingston left off. This contract does exactly what Your Honor said. It has two dispute resolution provisions. One that governs claims that are not IP and one that governs claims that are IP claims. It could not be clearer. What LaVon did in this case is it faithfully adhered to precisely what the parties consciously negotiated and agreed to. It had claims for Amherst's violation of various common law duties that it filed in arbitration consistent with Section 7.1.1. It had claims for Amherst's blatant violation of its IP rights, for misappropriation of trade secrets, for patent infringement, which it correctly filed in the district court here. Precisely pursuant to 7.2.1, which says you are not permitted to file that in arbitration. My friend asks, well, all they needed to do is file this in arbitration and have the arbitrators decide what to do. That's not what the parties agreed to do. And LaVon was not about to do something that was directly in the face of what the parties had expressly agreed to in the contract. 7.2.1 simply says you are not permitted to file IP claims in arbitration. Neither party is. You must file those in a district court of competent jurisdiction. LaVon did exactly that. And Amherst just didn't want to deal with the IP claims. It wants to call it the tail on the dog or worse. And it can deal with those claims as it needs to. But to change the question of what the parties agreed to for the forum is not the way to defend against a claim for IP infringement. And, Your Honor, this circuit's cases have been so clear on this point. Just last year in DDK Hotels, this court addressed the very same arguments that we've heard and we've seen in Amherst's briefs. And this court said it doesn't work that way. Number one, when you start with the question of delegation, who is supposed to decide arbitrability? DDK Hotels said, here's how it works. The burden rests on the party seeking to move it out of court. And in order to carry their burden, they have to demonstrate clear and unmistakable evidence that the parties wanted that issue of arbitrability, the delegation, to be in the arbitration, hand to the arbitration panel. Here you have the exact opposite, Your Honors. Here you have what is not necessary because it's their burden to show clear and unmistakable intent that we wanted this question decided by an arbitration panel. Here you have the opposite. Here you have what couldn't be a clearer provision that says any question related to any dispute on the IP front has to be decided in court and is not supposed to be decided by an arbitration panel. And I'll go one step farther, Your Honors. In DDK Hotels, the court addressed what my friend said as well. And it said, if the parties were so worried about this question of what's going to be public, what's not going to be public, very simple solution. It's very easy to include a provision in the contract that says, here's what is being arbitrated. Here's what's not being arbitrated. But when it comes to the question of who decides arbitrability with respect to any questions, that's going to the panel. Parties could have done that. And Mr. Celio is right. They were represented by competent counsel. They negotiated this agreement. And where they came out on this issue is crystal clear. There is no sentence. There is no provision that says we want arbitrability of any dispute, including an IP dispute, decided in the first instance by the arbitration panel. And if they say this is now subject to the carve-out, it gets litigated in the district court. Instead, the parties had 7.2.1, which has no exception whatsoever. Any question about any dispute relating to intellectual property infringement must be filed in court. And that's exactly what we did here. It's not just DDK hotels, although that's the most recent iteration. That's where the court addressed this issue squarely just last year. Two years prior, in the NASDAQ case in 2019, the same thing happened. And I'll briefly walk through the three or four cases where this court has squarely addressed arguments just like this. These are attempts to try and backdoor arbitration onto a type of claim that the parties here explicitly did not want arbitrated, and for many good reasons. And so, Your Honors, we respectfully submit that there is no basis for arguing that the contract here, which is more clear than the contracts in both DDK hotels and in the NASDAQ case. In both of those cases, Your Honor, the court noted that it's not just that it was clear that these particular disputes were subject to court and not arbitration. What the court said is it is arguably the case that the question goes to arbitration and arguably the case that it goes to court. But both of those courts said because the threshold inquiry of who decides is one where presumptively it goes to court and it can only be taken out of the court's hands if there is, quote, clear and unmistakable evidence, end quote, that that dispute was supposed to be relegated to arbitration. Both of those courts said in the face of arguable language that carved out the scope of those disputes from the scope of the arbitration clause, the arguable possibility was enough to defeat or ensure that the appellant in that case was not able to carry its burden of demonstrating to the court clear and unmistakable evidence to delegate the issue. On the actual decision, Justice — Judge Akin got it exactly right. This is as clear an IP dispute as it gets. These are claims for misappropriation of trade secrets and patent infringement. The fact that it appears that Amoris doesn't have any substantive defense to their misappropriation other than to dispute ownership, that's okay. They're entitled to defend it however they think they can. If they don't have any substantive defense to the actual misappropriation or to the actual infringement, they can try and make arguments about the ownership, but that's an element of any patent infringement case, and that's something that we're going to prove, and we look forward to proving it in court. So unless Your Honors have any further questions, I'm happy to rest and save you a little bit of time from the other arguments that went over. Thank you, Your Honors. Thank you. Thank you, Your Honors. I'll be brief. Just, I think, three points. First, if they're right that this is an IP claim, it won't be arbitrated. Simple as that. What we're asking for is that it be sent for a who-decides question. That decision will be made. If it's that simple, it won't be arbitrated. That doesn't turn the delegation question into an intellectual property dispute. Second point, DDK Hotels is perfectly consistent with our argument. Alliance Bernstein, a case that the other side has not discussed much and didn't discuss in their briefs, and I believe a member of this court was on one of those panels, is perfectly consistent with our argument. There's a way that this goes. In this circuit, we look at all of the facts surrounding it. In DDK Hotels, you had two big hotel companies coming together. They each had half the seats on the board, and they said, the only thing we're going to arbitrate are disputes where we're deadlocked at the board, which, you know, you could see coming because it was 50-50 on the board. And so they had a long list of things that they would arbitrate, but everything else was out. That is a bottom-up version. Alliance Bernstein deals with sort of the top-down version, which is precisely what we have here. This court can't just look at one case. It can't just look at DDK Hotels. It has to look at the broad scope, and the broad scope, consistent with the Schein case in the Supreme Court, is that you have to look at what the parties intended. You have to look at what was in and what was out. Here, everything is in except a small set. My final point before I sit down because I don't want to leave it unrebutted is we absolutely have a substantive defense. We absolutely will say and are saying, these are our patents. This is our IP. This case is a little bit crazy because we're being accused of infringing our own patents, and I think that, again, the burden when we shift to that side is, is there any reasonable claim that this is something that should be arbitrated? The burden shifts pretty substantially to our side when we move to that piece, and I think we've more than made that show. Unless there are any questions, I'll yield the floor. Thank you, Your Honor. Thank you, Counsel. Yes, thank you. Well argued, and we'll take the matter under advisement. And that's the last case on the calendar this morning, so I will ask the Deputy Clerk to adjourn.